IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

AMBER R. W.,

                        Plaintiff,

            v.                                    Civil Action No.
                                                  6:22-CV-0626 (FJS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

OLINKSY LAW GROUP                         CHELSEA RENGEL, ESQ.
250 South Clinton Street, Suite 210       HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    JUNE BYUN, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that she was not disabled at the

relevant times and, accordingly, is ineligible for the supplemental security

income ("SSI") benefits for which she has applied.  The matter has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

For the reasons set forth below, I recommend a finding that the

Commissioner's determination resulted from the application of proper legal

principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in April of 1985, and is currently thirty-eight years of

age.  She was thirty-four years old on July 24, 2019, the date upon which

she filed her application for benefits.  Plaintiff measures four feet and

eleven inches in height, and weighed approximately one hundred and

eighty-five pounds during the relevant period.  Plaintiff resides in an

apartment in Little Falls, New York with her husband and two minor

children.

Plaintiff reports that she has a high school education.  She has

worked in a part-time capacity in the past as a cashier, housekeeper, and

assembly worker, although her only full-time job was as a bread slicer and

bagger at a bakery in 2013.

Plaintiff alleges that she suffers from pain in her neck and lower back, issues with her right shoulder, depression, and a blood disorder that causes joint degeneration. As is relevant to her application for benefits, she treated for her physical impairments throughout the relevant period with Faxton-Saint Luke's Healthcare, Bassett Healthcare, Slocum-Dickson Medical Care, Central New York Brain and Spine Neurosurgery, Central New York Cardiology, Dr. Richard Chimelewski at the Falcon Clinic, and Dr. George Markwardt, DNP-FNP.[1] While she also received treatment for depression from Herkimer County Mental Health, she ceased treatment there after December of 2019, and it does not appear that she received any further mental health treatment.

At the administrative hearing related to her application for benefits, plaintiff reported that she cannot stand or sit upright for very long because of the pain in her neck and lower back, and as a result spends much of the day lying down. She testified that the pain in those areas is constant. She can do some housework and shopping, but her children and husband

---

[1]    I note that the ALJ and both parties refer to this source as "Dr. Markwardt," presumably as an acknowledgement of his DNP credentials. I too will refer to him in that manner throughout this decision, while acknowledging that he is not a licensed physician.

assist with those tasks.

II.    PROCEDURAL HISTORY

        A.    Proceedings Before the Agency

        Plaintiff applied for SSI payments under Title XVI of the Social

Security Act on July 24, 2019, alleging disability due to spinal problems and

a blood disorder that causes joint degeneration.  Administrative Law Judge

("ALJ") Kenneth Theurer held an administrative hearing to address

plaintiff's application on November 6, 2020, following which he issued a

decision on December 3, 2020, finding that plaintiff was not disabled.  That

opinion became a final determination of the agency on April 6, 2022, when

the Social Security Appeals Council ("Appeals Council") denied plaintiff's

request for review of the decision.

        B.    The ALJ's Decision

        In his decision, ALJ Theurer applied the familiar, five-step sequential

test for determining disability.  At step one, he found that plaintiff did not

engage in substantial gainful activity during the relevant period.  ALJ

Theurer next found at step two that plaintiff suffers from severe

impairments that impose more than minimal limitations on her ability to

perform basic work functions, including degenerative disc disease of the

cervical spine post fusion, degenerative disc disease of the lumbar spine, a

right shoulder impingement, bursitis of the hips, and obesity.  As part of his step two finding, ALJ Theurer also found that plaintiff's alleged hypertension, sleep apnea, migraines, gastroesophageal reflux disorder ("GERD"), depression, and anxiety disorder do not constitute severe impairments, and that her alleged fibromyalgia does not constitute a medically determinable impairment.

At step three, ALJ Theurer examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.02 and 1.04, as well as Social Security Ruling ("SSR") 19-2p, related to obesity.

ALJ Theurer next surveyed the available record evidence and determined that plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the sedentary exertional level, as defined by the controlling regulations, with the following exceptions:

> she can occasionally lift and carry ten pounds, sit for approximately six hours, and stand or walk for approximately two hours in an eight-hour day with normal breaks. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs and never climb ladders, ropes, or scaffolds. She can

perform no more than frequent reaching with her right upper extremity.

ALJ Theurer went on to step four to conclude that plaintiff is unable to perform her past relevant work as a baker's helper.  Proceeding to step five, the ALJ elicited testimony from a vocational expert and, relying on that testimony, found that plaintiff remains able to perform available work in the national economy, citing as representative positions the jobs of assembler, telephone quotation clerk, and inspector.  Based upon these findings, ALJ Theurer determined that plaintiff was not disabled at the relevant times.

C.    <u>This Action</u>

Plaintiff commenced this action on June 10, 2022.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ erred by (1) failing to properly weigh the opinions from treating source Dr. George Markwardt according to the governing regulations, and (2) failing to appropriately assess plaintiff's subjective complaints.  Dkt. No. 10.

Oral argument was conducted in this matter, by telephone, on April 20, 2023, at which time decision was reserved.

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

III.   <u>DISCUSSION</u>

A.   <u>Scope of Review</u>

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F.

Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    The ALJ's Assessment of Dr. Markwardt's Opinions

In support of her challenge to the Commissioner's determination, plaintiff argues that the ALJ erred in assessing the various multiple opinions

provided by treating source Dr. George Markwardt pursuant to the
applicable regulations.  Dkt. No. 10, at 16-21.  Specifically, she maintains
that (1) it was legal error under Second Circuit precedent for the ALJ to rely
on the checkbox nature of the opinion forms as a reason for discounting
those opinions; (2) the ALJ erred in finding that use of terms such as
"moderate" rendered many of the opinions too vague and conclusory to be
useful for formulating his RFC finding; (3) the ALJ erred in finding that
statements to the effect that plaintiff is unable to work are equivalent to
statements that she is disabled and therefore address an issue reserved to
the Commissioner; (4) the ALJ completely failed to considered the required
factors of supportability and consistency related to the earlier opinions
provided by Dr. Markwardt; and (5) although the ALJ nominally considered
those factors as to the October 2020 opinion, his analysis was so
conclusory as to prevent meaningful review.  *Id.*

Because plaintiff's application was filed after March 27, 2017, this
case is subject to the amended regulations regarding opinion evidence.
Under those regulations, the Commissioner "will not defer or give any
specific evidentiary weight, including controlling weight, to any medical
opinion(s), . . . including those from your medical sources," but rather will
consider whether those opinions are persuasive by primarily considering

whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[3] and consistency[4] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the

---

[3]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[4]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

As was noted above, Dr. Markwardt provided multiple opinions in connection with this matter, including two which were provided on a form for the New York State Office of Temporary and Disability Assistance, dated September 17, 2019, and June 7, 2020, one prepared on a form for the New York State Department of Motor Vehicles ("DMV") and dated June 23, 2020, and one which was provided on a medical source statement form apparently drafted by plaintiff's representative and which is dated October 23, 2020.  Administrative Transcript ("AT") at 1419-20, 1434-35, 1436-37, 1439.[5]

In the September 2019 form, Dr. Markwardt wrote that plaintiff's chronic pain is a permanent condition that causes moderate limitations in her abilities to stand, sit, lift, carry, push, pull, bend, and climb or use stairs, but no limitations in her abilities to walk, see, hear, speak, or use her hands.  AT 1436-37.  He further opined that plaintiff is unable to work until cleared by her physicians.  AT 1437.  The June 2020 opinion, prepared on the same form, is essentially identical, with the addition of a finding that plaintiff is moderately limited in her ability to walk.  AT 1434-1435.  In the

---

[5]    The administrative transcript is found at Dkt. No. 9, and will be referred to throughout this decision as "AT __."

DMV form, also dated in June of 2020, Dr. Markwardt opined that plaintiff is permanently disabled and is severely limited in her ability to walk.  AT 1439.  The ALJ found these opinions to be less persuasive because, although Dr. Markwardt is a treating health care provider, (1) he offered the opinions on a checkbox form without any supporting explanation for his choices, (2) they are expressed in vague and conclusory terms, (3) they lack the function-by-function analysis required for an RFC determination, and (4) the issue of whether a claimant is disabled is one that is reserved to the Commissioner.  AT 19.

In the October 2020 medical source statement, Dr. Markwardt opined that plaintiff can lift and carry ten pounds frequently and occasionally, stand or walk for less than two hours in an eight-hour workday without leaning or use of a supportive device, sit in an upright position for less than two hours in an eight-hour workday, and occasionally kneel, crouch and stoop, but never climb, balance or crawl.  AT 1419.  Dr. Markwardt further opined that plaintiff can occasionally reach and handle.  AT 1420.  In the section of the form which requests that he provide an explanation for his findings, Dr. Markwardt wrote simply "see neurosurgeon/orthopedic notes."  AT 1420. The ALJ also found this opinion to be less persuasive, because (1) it was issued on a checkbox form in which Dr. Markwardt provided no support, (2)

Dr. Markwardt's own treatment notes do not support any restriction in plaintiff's left upper extremity or for limitations in sitting or balancing and show only restricted range of motion in the lumbar area and right upper extremity, and (3) his opinion is not consistent with the other evidence of record, including an opinion from consultative examiner Dr. Gilbert Jenouri. AT 19.

### a. Form Opinions from September 2019 and June 2020

As was discussed above, plaintiff argues that the ALJ's reasons for finding these opinions to be less persuasive do not satisfy the regulatory or legal requirements for weighing opinion evidence. I agree. The ALJ completely failed to consider the regulatory factors of supportability and consistency related to these opinions. Although the ALJ did mention that Dr. Markwardt did not provide any support for his opinions on the relevant forms, he did not assess whether those opinions are supported by other evidence provided by Dr. Markwardt, including his treatment notes. Nor did he make any evaluation of whether or not they are consistent with the other evidence in the record, but instead merely stated that he found them to be expressed in vague and conclusory terms that lack the requisite function-by-function analysis to make them useful as evidence of plaintiff's functional ability. AT 19. In addition to failing to consider the relevant

factors, the ALJ's finding that the use of the term "moderate" is too vague

and conclusory to be useful is notably inconsistent with the fact that he

found the opinion of consultative examiner Dr. Gilbert Jenouri, which

expressed the examiner's opinion in similar terms of mild and moderate, to

be persuasive.  AT 19, 1082.  Because the ALJ has failed to consider the

required regulatory factors of supportability and consistency as to these

opinions and the reasons he has provided do not withstand scrutiny, I find

that the ALJ erred in his assessment of them.

Although the ALJ erred in applying the relevant regulatory and legal

principals to these opinions, I find that those errors are nonetheless

harmless because there is no indication that the functional limitations found

within those opinions are actually inconsistent with the ALJ's RFC finding.

All of the options checked by Dr. Markwardt regarding the various areas of

functioning listed, including walking, standing, sitting, lifting, carrying,

pushing, pulling, bending, and climbing, indicate that plaintiff is "moderately

limited" in those areas.  AT 1435, 1437.[6]  The form used does not provide a

---

[6]    I note that Dr. Markwardt opined also that plaintiff was moderately limited in her ability to function in a work setting at a consistent pace as a result of depression.  AT 1435, 1437.  However, the ALJ explained why he found plaintiff's mental limitations to be non-severe, specifically because they do not cause more than a minimal limitation on plaintiff's ability to perform basic mental work activities.  AT 14.  In making that finding, the ALJ discussed plaintiff's discharge from mental health treatment because it was no longer required, as well as the other evidence that showed no limitations.  AT 14-15.  To the extent that the ALJ did not explicitly address Dr. Markwardt's sole mental limitation

definition of "moderately limited." *Id.* Assuming it is defined or at least interpreted as the term "moderate" is generally understood in the Social Security disability context, as the ALJ appears to have done related to Dr. Jenouri's opinion, such limitations would not be inconsistent with the finding of sedentary work with occasional postural activities and climbing. *See Raymonda C. v. Comm'r of Soc. Sec.*, 19-CV-0178, 2020 WL 42814, at *4 (N.D.N.Y. Jan. 3, 2020) (Suddaby, C.J.) (finding that opinion for moderate restrictions in the abilities to stand, walk, sit, lift, and carry are not inconsistent with the capacity to perform sedentary work). Because it appears that the ALJ's RFC finding reasonably accounts for all of the physical limitations opined by Dr. Markwardt other than those touching upon issues reserved to the Commissioner, I find that any error in the ALJ's analysis of these opinions is harmless because a more proper evaluation would not reasonably alter the outcome in this case.[7] *See Michael C.*,

---

from these opinions, I find such error to be harmless given the ALJ's explanation at step two that shows more explicit consideration of that limitation would not have resulted in a different finding. *See Michael C. v. Comm'r of Soc. Sec.*, 18-CV-1115, 2019 WL 7293683, at *3 (N.D.N.Y. Dec. 30, 2019) (Baxter, M.J.).

[7]    Although Dr. Markwardt did check the box that plaintiff is "severely limited in [her] ability to walk" on the DMV form, I note that such opinion is wholly inconsistent with his opinion that plaintiff is only moderately limited in the same function on the more detailed form he completed in the same month. AT 1435, 1439. Further, as the walking capacity outlined in the DMV opinion is more consistent with that expressed in the October 2020 opinion, I find that the ALJ's rationale for rejecting such extreme limitations in the ability to walk related to that other opinion, which will be discussed in further detail later in this decision, would apply to the DMV opinion with equal force.

2019 WL 7293683, at *3 ("An ALJ's errors in weighing the evidence or applying the law may be considered harmless where proper consideration of the evidence or law would not have changed the outcome.") (collecting cases).

Lastly, I find no error in the ALJ's finding that statements to the effect that plaintiff is unable to work are issues reserved to the Commissioner, and are properly entitled to no deference. Plaintiff attempts to argue that an opinion that a claimant is "unable to work" is distinct from an opinion that a claimant is "disabled," and that the former is not covered by the relevant regulation. This argument is without merit. The relevant regulations specifically state that statements on issues reserved to the Commissioner that are neither valuable nor persuasive include "[s]tatements that you are or are not disabled, blind, *able to work*, or able to perform regular or continuing work." 20 C.F.R. § 416.920b(c)(3)(i) (emphasis added). The ALJ therefore did not err in finding the statements of Dr. Markwardt that plaintiff is unable to work until cleared by her physicians to be issues reserved to the Commissioner.

For all of the above reasons, I recommend a finding that remand is not required for any issues related to the ALJ's assessment of the September 2019 and June 2020 opinions from Dr. Markwardt, because any

errors committed in that respect are harmless.

### b. October 2020 Medical Source Statement

Plaintiff additionally argues that the ALJ's assessment of the October 2020 opinion is not supported by sufficient rationale or substantial evidence, again relying on the ALJ's citation to the checkbox nature of the form and his failure to appropriately consider the factors of supportability and consistency.  Unlike Dr. Markwardt's other opinions, however, I find that the ALJ's analysis of the October 2020 opinion sufficiently articulates a rationale based on the relevant factors to allow for meaningful review of his findings.

As to the ALJ's reliance on the fact that the opinion was rendered on a checkbox form on which Dr. Markwardt provided no support for his opinion, I find that such reason is not per se unreasonable.  Plaintiff is correct that an ALJ is not permitted to rely on the checkbox nature of an opinion as the sole basis for rejecting a treating source's opinion.  *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022).  That principle, however, does not preclude the ALJ from considering whether the form on which the source has provided the opinion contains an explanation for the options chosen, nor does it constitute error if the ALJ has provided additional valid applicable reasons for finding the opinion to be less

19

persuasive. *See Schillo v. Kijakazi*, 31 F.4th 64 (2d Cir. 2022) (affirming that an ALJ can reject the opinion of a treating physician rendered on a checkbox form if that form contains no explanation and the opinion is not otherwise supported by the source's treatment records); *Cody J. W. v. Comm'r of Soc. Sec.*, 21-CV-0515, 2022 WL 4585694, at *6 (N.D.N.Y. May 24, 2022) (Peebles, M.J.) (finding that ALJ's reliance on the checkbox nature of the form, if error, was merely harmless because the ALJ provided other rationale to support his conclusions); *Daniel J. v. Kijakazi*, 21-CV-1121, 2022 WL 17177619, at *9 (N.D.N.Y. Nov. 23, 2022) (Baxter, M.J.) (finding that ALJ's citation to checkbox nature of the opinion was not error because the ALJ did not rely merely on the form of the opinion, but also on the fact that the source failed to provide a supporting narrative to accompany her conclusions).  As the ALJ noted, Dr. Markwardt did not provide any specific narrative or explanation for the limitations cited, but rather pointed the reader to the plaintiff's neurosurgery and orthopedic notes, without indicating which specific treatment records or findings within these support his findings.  As will be discussed in more detail below, the ALJ also found that the other evidence of record, which would include the treatment records of other sources, is not consistent with Dr. Markwardt's opinion.  I therefore find that the ALJ's citation to the checkbox nature of

the form was not erroneous because he relied not merely on the form of the opinion, but also the fact that Dr. Markwardt failed to provide any explanation to support his opinion.

Further, as to the factor of supportability specifically, the ALJ noted that Dr. Markwardt's treatment notes showed only restricted range of motion in plaintiff's lumbar spine and right upper extremity, but did not contain any findings to support opined restrictions in the use of her left upper extremity or extreme limitations in sitting or balancing.  AT 19.  While plaintiff argues that the ALJ's explanation is too conclusory to satisfy the articulation requirement, I disagree.  The ALJ clearly explained that the findings evident in Dr. Markwardt's own treatment records did not support certain restrictions in his opinion.  Notably, plaintiff has not pointed to any evidence in Dr. Markwardt's records that would contradict the ALJ's findings or suggest that the ALJ ignored greater pertinent findings in support of the opinion.  Rather, as the ALJ stated, Dr. Markwardt's records show pertinent findings of restricted range of motion in the lumbar area due to pain with no obvious deformity, and restricted range of motion in her right upper extremity due to pain with no swelling or deformity, and do not otherwise contain information or even subjective reports by the plaintiff that would support the extent of many of the limitations he includes in his

opinion.  *See e.g.,* AT 1294, 1309, 1312, 1316, 1319, 1379, 1384.

Because the ALJ assessed the content of Dr. Markwardt's treatment

records and reasonably concluded that they do not support the majority of

his opinion, I find that the ALJ appropriately considered, and articulated his

consideration of, that factor.

Regarding the consistency regulatory prong, the ALJ's explanation

within the paragraph addressing the relevant opinion is admittedly cursory,

with the ALJ stating merely that the opinion is not consistent with the

"evidence of record, including the opinion of Dr. Jenouri."  AT 19.  However,

this does not mean that the explanation, particularly when considered with

the decision as a whole, is inadequate to provide meaningful review of the

ALJ's assessment of consistency.  The ALJ cited specifically to Dr.

Jenouri's opinion in support of his finding, and I find no error in that respect.

Dr. Jenouri observed during his examination in November of 2019 that

plaintiff had an antalgic gait, could squat fifty-percent of normal, and had

decreased range of motion in her neck, lumbar spine, and right shoulder

with decreased sensation in her left leg.  AT 1081-82.  In light of these

findings, Dr. Jenouri opined that plaintiff has mild-to-moderate restrictions

in walking and standing long periods, bending, stair climbing, lifting and

carrying.  AT 1083.  As was discussed previously, even moderate

restrictions in this area have generally been found to not be inconsistent with an ability to perform a range of sedentary work, and therefore the ALJ reasonably found that Dr. Jenouri's assessment is inconsistent with the greater limitations opined in the October 2020 opinion.

In addition, although the ALJ did not discuss any supportive evidence in the paragraph related to the relevant opinion, he did engage in a discussion of the treatment evidence generally earlier in his decision, in which he acknowledged that in August 2019, plaintiff reported back pain that caused an antalgic gait and caused her to use a cane when walking. AT 17.  He further acknowledged, however, that subsequent treatment notes showed that plaintiff reported significant relief in her back pain with a spinal cord stimulator trial in October 2019, such that the pain became "quite manageable" and she was able to be more active.  AT 17.  The ALJ further noted that, in September of 2020, plaintiff reported that the permanent spinal cord stimulator allows her to stand for longer periods with much less radiation of pain into her legs, and she was observed to have a normal neurological examination.  AT 18.  Additionally, he observed that subsequent notes documented that, although the spinal cord stimulator did not relieve all of her back pain, it reduced it greatly and osteopathic manipulation therapy provided further relief.  AT 18.  The ALJ also

discussed how there was very little evidence of ongoing issues with plaintiff's hip or right shoulder after 2019.  AT 18.  This discussion of the evidence, which I find to be a fairly accurate, albeit truncated, representation of the treatment record, provides an indication of what evidence the ALJ had found to be inconsistent with the more restrictive limitations in Dr. Markwardt's October 2020 opinion.

Moreover, my own independent review of the record substantiates the ALJ's assessment that, following placement of the permanent spinal cord stimulator in March of 2020 – approximately nine months after plaintiff's application filing date – while she continued to have some numbness and tingling in her leg, her lower back pain had improved significantly, and she experienced even more relief with continued osteopathic manipulation therapy.  AT 1239, 1279, 1367, 1400, 1407, 1413, 1422.  She specifically reported that, after receiving the stimulator, her pain was manageable, she was able to be more active, and she was able to stand for longer periods, all of which the ALJ acknowledged.  AT 1279, 1400.  Further, there were no apparent lingering issues with plaintiff's right shoulder after she underwent surgery in June of 2019, and only a few sporadic reports of neck or thoracic pain during the relevant period, with generally normal examinations related to those areas.  AT 1279, 1407.

Plaintiff notably has not pointed to any evidence in the record that would materially contradict the ALJ's conclusion regarding consistency.  Based on the ALJ's discussion of the evidence, I find that his statement that Dr. Markwardt's opinion is inconsistent with the evidence in the record is not so conclusory as to preclude for meaningful review, and that the ALJ's finding regarding consistency is supported by substantial evidence.

For all of the above reasons, I recommend that the ALJ's assessment of Dr. Markwardt's October 2020 opinion be found to be consistent with the applicable regulatory standards and supported by substantial evidence.

### 2.   The ALJ's Assessment of Plaintiff's Subjective Reports

In his decision, the ALJ found that plaintiff's subjective reports of constant pain and significant limitations in her ability to perform household and other tasks, including her need to lay down most of the day, were not consistent with the medical evidence in the record, evidence of her daily activities, the documented efficacy of her treatment at managing her symptoms, and her sparse work history that suggests other factors aside from her impairments are the root cause of her failure to work.  AT 17, 20. Plaintiff argues that the ALJ erred when assessing her subjective complaints, contending that the reasons the ALJ provided in support of his rejection of the extent of those complaints are not supported by substantial

evidence.  Dkt. No. 10, at 7-15.

Under the two-step review protocol applicable in social security cases for assessing a claimant's subjective reports of symptoms, an ALJ must first determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, and, if so, the ALJ must then evaluate the intensity and persistence of those symptoms and determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8.  When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors.  *Id.*

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, provided that it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision"). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

After reviewing the record, I find that the ALJ has provided sufficient reasons, supported by substantial evidence, for his finding that plaintiff's

subjective reports are not wholly consistent with the available evidence.

Most notably, as was discussed above, the medical evidence shows that

plaintiff's neck issues improved, with the exception of sporadic complaints

later in 2020, following a cervical discectomy in January of 2018.  AT 1053.

Similarly, her shoulder symptoms appeared to be resolved by her surgery

in June of 2019, which, again, was prior to the application filing date.  AT

408.  Although plaintiff's treatment records certainly substantiate significant

symptoms related to her lower back in July, August, and September of

2019, including an antalgic gait and the use of a cane, they also clearly

document that her pain was significantly improved by first the spinal cord

stimulator trial in October of 2019, and later the implantation of the

permanent stimulator in March of 2020.  AT 1215, 1220, 1229, 1231, 1239,

1243, 1279, 1400, 1410, 1422.  Osteopathic manipulation therapy provided

further significant relief for the pain that remained.  AT 1400, 1413, 1422.

Plaintiff reported that the spinal cord stimulator allowed her to be more

active and to stand longer.  AT 1279, 1400.  The ALJ's reliance on the

medical evidence and evidence regarding efficacy of treatment at bringing

her pain to a manageable level that increased her functional abilities

therefore constitute reasons supported by substantial evidence to support

the assessment of plaintiff's subjective reports.

Plaintiff argues that the ALJ's reliance on her activities of daily living is flawed since his recitation fails to accurately recount her limitations. However, notwithstanding any failure by the ALJ to fully account for all of the details regarding the limited capabilities reported by the plaintiff, the above evidence contradicts plaintiff's reports that she has greatly limited capabilities to do much housework, shopping, or even stand or sit for any significant period of time. Moreover, the overstatement of plaintiff's activities does not undermine the ALJ's conclusion that the record evidence supports the finding that plaintiff can perform sedentary work with the additional limitations cited in the RFC determination. Similarly, although the ALJ was permitted to consider plaintiff's poor work history as one factor in assessing whether her reports of limitation or disability are supported, I find that his reliance on this factor is of little consequence in this instance, inasmuch as he has provided ample citation to the other evidence that squarely contradicts the plaintiff's reports of significant inability to function during the relevant period. Accordingly, to the extent that plaintiff claims error in the ALJ's reliance on this factor, such error, if it was error, was nonetheless harmless.

For all of the above reasons, I recommend a finding that the ALJ's assessment of plaintiff's subjective complaints, which is entitled to

considerable deference on review, is supported by substantial evidence.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 12) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   April 28, 2023
         Syracuse, NY                      DAVID E. PEEBLES

30

U.S. Magistrate Judge